UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
RABINDRANAUTH PERSAUD,

                               Petitioner,

    -against-

WARDEN, Federal Prison Camp, Lewisburg,

                               Respondent.
------------------------------------------------------------x

NOT FOR PUBLICATION
MEMORANDUM & ORDER

10-CV-5920 (CBA)

AMON, Chief United States District Judge:

Petitioner Rabindranauth Persaud, *pro se*, who is currently incarcerated at the Federal Prison Camp at Lewisburg, Pennsylvania, filed a petition challenging his November 25, 2002 conviction in this Court, purportedly pursuant to 28 U.S.C. § 2241(c)(3) ("§ 2241"). For the reasons that follow, the petition is dismissed for lack of jurisdiction.

## BACKGROUND

Petitioner and his brother and co-defendant Ramanand Persaud were each convicted by a jury in this Court of three counts related to the importation of cocaine, conspiring to import, importing, and attempting to possess cocaine in the amount of five kilograms or more, in violation of 21 U.S.C. §§ 963, 952(a) and 846, respectively. At trial, United States Customs Service Agent Giavanny Arreaga testified that he was on duty as a Customs Inspector at JFK Airport on November 17, 2001 when he became suspicious of an air cargo shipment with "preserved mangos" and "confectionery" listed on the airway bill. (United States v. Persaud, et al., No. 01-cr-1342, Trial Transcript ("Tr.") at 33-34, 38-39, 50, 145-150.) Agent Arreaga testified that he searched the shipment, which consisted of three boxes, and discovered candy and other snacks, along with twelve bricks of a substance he believed to be narcotics. (Tr. at 43, 50-55.) He further testified that he initialed each brick, secured the bricks in a customs service van, and conducted a

field test which showed the substance to be cocaine. (Tr. at 44.) The parties stipulated that a chemist at the Drug Enforcement Administration laboratory analyzed the twelve bricks on November 20, 2001 and found them to consist of cocaine in the amount of 11,995 grams. (Tr. at 115.)

United States Customs Service Special Agent Jason Molina testified that he was called to the cargo warehouse after customs agents discovered contraband. (Tr. at 105.) He testified that the cocaine had been removed from the boxes and the boxes resealed prior to his arrival. (Tr. at 116, 162-63.) Molina testified that he personally delivered the three boxes, no longer containing cocaine, to Rabindranauth, Ramanand, and a third individual. (Tr. at 110-13.) He called this procedure a "controlled delivery," which he described thus: "It's a delivery of what the individual thinks is drugs. Obviously, we take the drugs out, because there's other risk factors that go with that, and it's in a controlled environment." (Tr. at 116.) The men were arrested immediately after the delivery. (Tr. at 113, 166.)

Agent Molina also testified to his subsequent separate interviews with each defendant. The Court cautioned the jury that the testimony about each defendant's statements could only be considered as evidence against that defendant. (Tr. at 122-23, 139.) According to Molina, petitioner initially stated that he was picking up the shipment for somebody named Richard and that he believed the boxes to contain mangos and preserves. (Tr. at 124.) Molina testified that upon further questioning, petitioner next stated that he believed there to be "gripe water" and then, later, that he believed there to be marijuana inside the shipment. (Tr. at 125, 127.)

Other testimony indicated that the shipment was accompanied by airway bills that contained IRS numbers and IT numbers that had been assigned to two companies, Transborder

Air Cargo and Port Brokers. (Tr. at 218-19, 223.) Employees from each company testified that the numbers had been used without permission. (Tr. at 219, 226.) Employees of Port Brokers testified that petitioner's brother Ramanand had worked at the company and had access to the numbers. (Tr. at 221-28, 232, 234.) Customs Forms containing Ramanand's name and signature were entered into evidence. (Tr. at 226, 228.)

Petitioner testified in his own defense at trial. He testified that he told the agent that the boxes contained confectionery, mangos, and gripe water. (Tr. at 299-300.) He denied telling the agent that there was marijuana in the boxes. (Tr. at 300, 303, 330, 344-45.) He further denied that he had any knowledge that the shipment contained cocaine. (Tr. at 311, 335.) The jury reached a verdict on March 15, 2002, finding both defendants guilty on all counts. The Court entered judgment and sentence on November 25, 2002. Petitioner appealed to the United States Court of Appeals for the Second Circuit, which affirmed the conviction and sentence on March 15, 2004. United States v. Persaud, 87 Fed. Appx. 214 (2d Cir. 2004). On July 9, 2004, petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 ("§ 2255"), which was denied by this Court on December 28, 2005. Persaud v. United States, No. 04-CV-2861 (CBA) (E.D.N.Y. Dec. 28, 2005). Petitioner did not file a notice of appeal within 30 days.

Since then, petitioner has filed multiple additional motions, in this and other courts, seeking to overturn his conviction and sentence. On August 8, 2006, he filed a "Petitioner Motion for Sentencing Reduction Pursuant to 18 U.S.C. § 3553(a)," and on September 8, 2006, he filed a "Petitioner Motion for Reduction of Sentence Pursuant to Rule 60(b)(1) of the Federal Rules of Civil Procedure." The motions were both filed under a new civil docket number and dismissed. See Persaud v. United States, No. 06-CV-3955 (CBA) (E.D.N.Y. Dec. 29, 2006) (final judgment

3

dismissing motions). On April 15, 2008 and February 4, 2010, petitioner filed motions seeking to re-open the December 28, 2005 judgment denying his original petition for a writ of habeas corpus. Both were denied. See Persaud, No. 04-CV-2861, 2010 WL 3000725 (E.D.N.Y. July 27, 2010)(denying his February 4, 2010 motion).

Petitioner has twice sought leave of the Court of Appeals for an order authorizing a second or successive petition pursuant to § 2255, and was twice denied. Persaud v. United States, No. 06-4170-op (2d Cir. Oct. 6, 2006), Issued as Mandate, Dec. 28, 2006 (Docket Entry 20 in 04-CV-2861); Persaud v. United States, No. 09-2809-op (2d Cir. Aug. 10, 2009), Issued as Mandate, Oct. 15, 2009 (Docket Entry 23 in 04-CV-2861). In addition, petitioner has filed two petitions seeking a writ of *audita querela*. Both petitions were dismissed. Persaud v. United States, No. 08-CV-4365 (CBA), 2008 WL 5047707 (E.D.N.Y. Nov. 25, 2008); Persaud v. United States, No. 09-CV-129 (CBA), 2009 WL 136027 (E.D.N.Y. Jan. 20, 2009).

Petitioner also sought relief in the United States District Court for the Middle District of Pennsylvania, where he filed two petitions, ostensibly pursuant to § 2241, asserting that he was actually innocent of the charges on which he was convicted. The first petition was dismissed for lack of jurisdiction. Persaud v. Warden Jerry C. Martinez, No. 08-CV-1382 (M.D.Pa. Aug. 26, 2008). The second petition was dismissed without prejudice for failure to pay the filing fee. Persaud v. Warden, 10-CV-1749 (M.D.Pa. Oct. 4, 2010).

The instant petition also seeks relief under § 2241, arguing that § 2255 is inadequate and ineffective and that petitioner is actually innocent of the charges on which he was convicted. (Pet. at 6.) Petitioner argues that "Rabindranauth Persaud cannot be guilty of Conspiracy to Import a Controlled Substance, or Importation of a Controlled Substance, in violation of Title 21 U.S.C.

963, 952(a), and 960(a)(1), when Confectionaries is not a controlled substance." (Pet. at 4.) He alleges that "Agent Jason Molina testified that Rabindranauth Persaud had possession, dominion, and control over three boxes of confectionaries when arrested." (Pet. at 3.) Petitioner describes one type of "controlled delivery" in which law enforcement officers discover contraband, then return it to the container prior to delivery, and states: "THIS IS NOT RABINDRANAUTH'S CASE." (Pet. at 5.) Petitioner seeks a hearing and immediate release from custody.

## DISCUSSION

### A.   No Jurisdiction Over Petitioner's Claims

Section 2241 permits habeas corpus review for federal prisoners "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). However, the application of this provision is limited by Sections 2254 and 2255 of that title, which provide separate mechanisms for state and federal prisoners challenging the legality of their convictions or sentences. "[A]s a general rule, federal prisoners must use § 2255 instead of § 2241(c)(3) to challenge a sentence as violating the Constitution or laws of the United States." Jiminian v. Nash, 245 F.3d 144, 146-47 (2d Cir. 2001) (citing Triestman v. United States, 124 F.3d 361, 373 (2d Cir. 1997)). Section 2255(e) contains a "savings clause" that allows a federal prisoner challenging his conviction or sentence to file a § 2241(c)(3) petition in certain limited situations where § 2255 is an inadequate or ineffective remedy and "when the failure to allow for some form of collateral review would raise serious constitutional questions." Triestman, 124 F.3d at 377. Section 2255, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), also contains a number of gatekeeping requirements, including restrictions on second or successive petitions. A district court cannot consider a successive motion unless it is certified

5

by the court of appeals. However, the unavailability of a second or successive § 2255 petition, where certification is not sought or granted, is not grounds for application of the savings clause in § 2255(e), unless the prisoner is asserting "actual innocence" and "could not have effectively raised his claim of innocence at an earlier time." Triestman, 124 F.3d at 363; see also Jiminian, 245 F.3d at 147-148 ("We now hold that § 2255 is not inadequate or ineffective, such that a federal prisoner may file a § 2241(c)(3) petition, simply because a prisoner cannot meet the AEDPA's gate-keeping requirements, provided that the claim the prisoner seeks to raise was previously available on direct appeal or in a prior § 2255 motion.").

In this case, petitioner has already filed the one petition pursuant to § 2255 to which he is entitled, and that petition was denied by this Court's December 28, 2005 Order. He does not assert any viable ground for invoking the savings clause of § 2255(e). He claims actual innocence, and cites Bousley v. United States for the proposition that "'actual innocence' means factual innocence, not mere legal insufficiency." 523 U.S. 614, 623-624 (1998). Yet petitioner presents no new evidence that he is actually innocent; his claims merely challenge the sufficiency of the evidence presented at trial.

Petitioner argues that the trial testimony indicated that, at the moment of his arrest, he had possession, dominion, and control of three boxes containing only confectionery. Petitioner correctly observes that the evidence at his trial did not demonstrate that there was cocaine inside the boxes at the time that they were delivered to him. Instead, the evidence showed that agents searched the shipment before it was delivered, found nearly 12 kilos of cocaine inside the boxes, and removed the cocaine prior to delivering the boxes to petitioner and his co-defendant. The Court notes that petitioner was not convicted of *possessing* cocaine. Instead, petitioner was

convicted of three offenses related to importation: conspiring to import cocaine, in violation of 21 U.S.C. §§ 963, 960(a)(1) and 960(b)(1)(B)(ii), importing cocaine, in violation of 21 U.S.C. §§ 952(a), 960(a)(1) and 960(b)(1)(B)(ii), and *attempting* to possess cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(ii)(II).

The evidence also included Agent Molina's testimony about petitioner's changing story and eventual admission that he thought there was marijuana inside the boxes. This record does not support petitioner's claim for "factual innocence" or "actual innocence." The jury heard this evidence at trial, had the opportunity to weigh its credibility, and apparently found it sufficient to find him guilty of the charged offenses. To the extent that petitioner believed that this record was insufficient to support a finding of guilty, a claim regarding the sufficiency of the evidence could have been raised at trial and in his initial § 2255 petition.

As petitioner has not shown "actual innocence" or that he could not have raised such a claim at an earlier time, he cannot invoke the savings clause in 28 U.S.C. § 2255(e), and thus a petition pursuant to 28 U.S.C. § 2241(c)(3) is unavailable to petitioner. Under these circumstances, the Court may proceed on one of two alternate paths:

> [W]hen a prisoner files a § 2241 petition in an attempt to evade § 2255's limits on second or successive petitions, and when the petitioner has already had a prior § 2255 petition dismissed on the merits, . . . the district court can treat the § 2241 petition as a second or successive § 2255 petition and refer the petition to [the Court of Appeals] for certification, . . . or, if it is plain from the petition that the prisoner cannot demonstrate that a remedy under § 2255 would be inadequate or ineffective to test the legality of his detention, the district court may dismiss the § 2241 petition for lack of jurisdiction.

Adams v. United States, 372 F.3d 132, 136 (2d Cir. 2004)(citing Jiminian, 245 F.3d at 148 and Cephas v. Nash, 328 F.3d 98, 104 (2d Cir. 2003)). It is clear that, based on these set of

7

allegations, Petitioner cannot demonstrate that a § 2255 petition would be inadequate or ineffective to challenge his confinement. See id. Accordingly, the § 2241 petition is dismissed for lack of jurisdiction.

### B. Warning About Vexatious and Frivolous Filings

Since petitioner's unsuccessful challenge to his 2002 judgment of conviction under 28 U.S.C. § 2255, petitioner has filed multiple additional motions challenging his conviction, including two non-meritorious petitions for *audita querela* relief, at least two requests to the Court of Appeals for an order authorizing a second or successive petition pursuant to § 2255, and prior motions claiming jurisdiction under § 2241. The federal courts have limited resources. Frequent frivolous filings work to diminish the ability of the courts to manage their dockets for the efficient administration of justice. "The district courts have the power and the obligation to protect the public and the efficient administration of justice from individuals who have a history of litigation entailing vexation, harassment and needless expense to other parties and an unnecessary burden on the courts and their supporting personnel." Lau v. Meddaugh, 229 F.3d 121, 123 (2d Cir. 2000)(internal quotations and citations omitted). Accordingly, petitioner is warned that the future filing of additional frivolous motions may result in the imposition of sanctions, including the issuance of a filing injunction. See In re McDonald, 489 U.S. 180, 184 (1989)(barring *pro se* litigant with history of frequent frivolous litigation from filing petitions for extraordinary writs); Moates v. Barkley, 147 F.3d 207, 208 (2d Cir. 1998) (district courts are required to provide notice and an opportunity to be heard before imposing a filing injunction on a habeas petitioner with a penchant for filing frivolous and duplicative claims).

## CONCLUSION

For the foregoing reasons, the petition is dismissed for lack of jurisdiction. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

/S/

Dated: Brooklyn, New York
June 30, 2011

CAROL BAGLEY AMON
Chief United States District Judge